IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| DAVID A. McCOY II, JEFFREY M. JOHNSON, SR.<br><br>*Plaintiffs,*<br><br>vs.<br><br><br>BOB JACOBSON, in<br>His official capacity as the<br>Commissioner of the Minnesota<br>Department of Public Safety,<br><br>*Defendant.* | CIVIL NO. 0:25-cv-00054<br><br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.    This is a constitutional challenge to Minnesota's refusal to recognize firearm permits lawfully issued by other States. Minnesota criminalizes carrying a firearm without a Minnesota permit or a recognized out-of-state firearm permit. Every year, the Commissioner for Minnesota's Department of Public Safety decides which out-of-state firearm permits Minnesota will and will not recognize. The recognition of out-of-state firearm

permits is at the Commissioner's sole discretion and is not based on objective standards.

2.    Currently, Minnesota only recognizes the out-of-state firearm permits from 20 states, and refuses to recognize the out-of-state permits from 29 states, including Texas, Florida, and Georgia. In other words, millions of law-abiding citizens who lawfully bear arms in their home states cannot do so while visiting the State of Minnesota—unless they obtain a separate Minnesota firearm permit.

3.    Minnesota's failure to honor lawfully issued firearm permits from all States places an unreasonable burden on Plaintiffs' Second Amendment right to bear arms. Individuals do not lose their constitutional rights simply by crossing into another state. In fact, there is no other constitutional right that Minnesota requires a visiting individual to first obtain permission before they may exercise a fundamental right.

4.    The Minnesota firearm permit law and the Commissioner's arbitrary refusal to recognize the lawfully issued firearm permits from all other States violates the Second Amendment. Defendant will continue to infringe on millions of Americans' right to bear arms in

Minnesota unless, and until, a court declares the law and actions unconstitutional and enjoins Defendant's enforcement.

## JURISDICTION AND VENUE

5.    Plaintiffs seek declaratory (28 U.S.C. § 2201) and injunctive relief (28 U.S.C. § 2202) against Minnesota's reciprocity law (Minn. Stat. § 624.714 Subd. 16) because it violates the Second Amendment (42 U.S.C § 1983 - constitutional rights) and entitles Plaintiffs to attorneys' fees (42 U.S.C. § 1988 - attorneys' fees).

6.    This Court has jurisdiction over these federal claims under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) (redress for deprivation of civil rights).

7.    Venue lies in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2) because the actions complained of took place in this judicial district, documents and records relevant to the allegations are maintained in this judicial district, and the Defendant is present in and regularly conducts affairs in this judicial district.

## PARTIES

8.    Plaintiff David A. McCoy II ("McCoy") is a natural person, a United States citizen, and a resident of the State of Texas.

3

9.      Plaintiff Jeffrey M. Johnson, Sr. ("Johnson") is a natural person, a United States citizen, and resident of the State of Georgia.

10.     Defendant Bob Jacobson is sued in his official capacity as the Commissioner of the Minnesota Department of Public Safety ("Commissioner").[1] As Commissioner, he exercises, delegates, or supervises all the powers and duties of the Minnesota Department of Public Safety. The Commissioner, under the Minnesota firearm permit statute, has several duties connected with the statute's enforcement, including but not limited to:  adopting statewide standards governing the form and contents of all permit-to-carry applications (Minn. Stat. § 624.714 subd. 7(a)); making application forms available online (Minn. Stat. § 624.714 subd. 3(h)); maintaining a database of permit applicants and holders (Minn. Stat. § 624.714 subd. 15(a) and (b)); providing relevant investigative data to Sheriffs (Minn. Stat. § 624.714 subd. 4(a)); and collecting the processing and renewal fees (Minn. Stat. §

---

[1] The doctrine of sovereign immunity does not apply to the Commissioner of the Department of Public Safety in a challenge to Minnesota's permit to carry law, under Minn. Stat. § 624.714. *Worth v. Jacobson*, 108 F.4th 677, 684 n.3 (8th Cir. 2024) (reasoned that because the Commissioner has several connections with the enforcement of the act that Commissioner is not entitled to state sovereign immunity).

624.714 subd. 3(f) and subd. 7(c)(1)). The Commissioner is also responsible for annually determining its out-of-state firearm permit reciprocity list, publishing that list online, and executing reciprocity agreements. Minn. Stat. § 624.714 subd. 16(a) and (d).

## FACTS

### Minnesota Firearms Law

11.    Minnesota prohibits publicly carrying a firearm for self-defense unless one has a Minnesota Permit to Carry ("PTC") under Minn. Stat. § 624.714 or a firearm permit issued by a state for which Defendant has granted recognition or reciprocity.

12.    Under Minnesota law, "[a] person, . . . , who carries, holds, or possesses a pistol in a motor vehicle, snowmobile, boat, or on or about the person's clothes or the person, or otherwise in possession or control in a public place, . . . , without first having obtained a permit to carry the pistol is guilty of a gross misdemeanor. A person who is convicted a second or subsequent time is guilty of a felony." Minn. Stat. § 624.714 Subd. 1a.

13.    A gross misdemeanor is punishable by up to 364 days in prison, a fine of up to $3,000, or both. Minn. Stat. § 609.03(2). A felony

5

is punishable by up to five years in prison, a fine of up to $10,000, or both. Minn. Stat. § 609.03(1).

14.    "Applications by Minnesota residents for permits to carry shall be made to the county sheriff where the applicant resides. Nonresidents, as defined in section 171.01, subdivision 42, may apply to any sheriff." Minn. Stat. § 624.714 Subd. 2(a).

15.    Unless a sheriff denies a permit under one of the enumerated exceptions, a sheriff must issue a permit to an applicant if the person: (1) has the training in the safe use of a pistol; (2) is at least 21 years old[2] and a citizen or permanent resident of the United States; (3) completes an application for a permit; (4) is not otherwise prohibited by Minnesota or Federal law from possessing a firearm; and (5) is not listed in the criminal gang investigative data system. Minn. Stat. § 624.714 Subd. 2(b).

16.    All "[a]pplications must be submitted in person." Minn. Stat. § 624.714 Subd. 3(e).

---

[2] The Eighth Circuit recently upheld the Minnesota District Court's grant of summary judgment that the Minnesota PTC requirements, Minn. Stat. § 624.714, Subd. 1a, which bans 18-20 year olds from carrying handguns in public violates the Second Amendment. *Worth v. Jacobson*, 108 F.4th 677 (8th Cir. 2024).

17.    Within 30 days after the receipt of the application packet the sheriff must: "(1) issue the permit to carry; (2) deny the application for a permit to carry solely on the grounds that the applicant failed to qualify under the criteria described in subdivision 2, paragraph (b); or (3) deny the application on the grounds that there exists a substantial likelihood that the applicant is a danger to self or the public if authorized to carry a pistol under a permit." Minn. Stat. § 624.714 Subd. 6(a).

18.    Failure to notify the applicant of the denial within 30 days results in automatic issuance of the permit. Minn. Stat. § 624.714 Subd. 6(b).

19.    Upon issuance of the permit, the laminated permit card must be sent to the applicant by mail or personal delivery. Minn. Stat. § 624.714 Subd. 6(c).

20.    The permit to carry a pistol is only valid for five years and must be renewed in the same manner as the initial application. Minn. Stat. § 624.714 Subd. 7(c).

21.    The only way to lawfully carry a handgun in a motor vehicle in Minnesota without a Minnesota PTC or recognized out-of-state permit is to have "the pistol [] unloaded, contained in a closed and

fastened case, gunbox, or securely tied package." Minn. Stat. § 624.714 Subd. 9(5).

22.    "The commissioner must annually establish and publish a list of other states that have laws governing the issuance of permits to carry weapons that are not similar to this section. The list must be available on the Internet. A person holding a carry permit from a state not on the list may use the license or permit in this state subject to the rights, privileges, and requirements of this section." Minn. Stat. § 624.714 Subd. 16(a).

23.    "The commissioner must, when necessary, execute reciprocity agreements regarding carry permits with jurisdictions whose carry permits are recognized under paragraph (a)." Minn. Stat. § 624.714 Subd. 16(d).

24.    As of January 2025, Minnesota only recognizes the out-of-state permits from 20 states, and 29 states are not recognized.[3] Included in the list of states *not* recognized are Texas, Florida, and Georgia.

---

[3] https://dps.mn.gov/divisions/bca/public-services-bca/firearms-information/permit-carry-reciprocity, last visited January 3, 2025.

## Plaintiff McCoy

25.    Plaintiff McCoy is a professional full-time, long-haul 18-wheel truck driver. He travels on the road delivering goods throughout the 48 contiguous states at least 300 days a year, including several trips each year to and through Minnesota.

26.    Plaintiff McCoy is a law-abiding person, a gun owner, and possesses a current, valid Texas License to Carry ("LTC"), which permits him to bear arms in public in Texas and across much of the country. Plaintiff has had his Texas LTC permit for about six years. His Texas LTC is current and valid until 2028.

27.    Plaintiff is currently a U.S. Concealed Carry Association ("USCCA") platinum member and has been a USCCA member for about 6 years. He has taken many USCCA courses, as well as attending an Active Self Protection conference.

28.    He regularly carries his firearm for self-defense, defense of his home, defense of others, and defense of his cargo.

29.    Plaintiff is a responsible, peaceable citizen, with no history of violent behavior or other conduct that would pose any threat or

danger to the public, and who is not otherwise disqualified from obtaining a Minnesota permit.

30.    Minnesota, however, does not recognize his Texas LTC permit.

31.    It is his present intention and desire to lawfully carry a firearm in public, including having it readily accessible within in his truck, for the purpose of self-defense while in Minnesota and would do so if Minnesota recognized his valid, current, lawfully issued firearm permit from Texas.

32.    But because Minnesota does not recognize his out-of-state firearm permit, Plaintiff has refrained from carrying a firearm in public in Minnesota. Instead, Plaintiff securely stows his firearm in his truck, inaccessible and unusable, in accordance with Minnesota law.

33.    He travels through Minnesota several times a year.

34.    Plaintiff McCoy's personal ethos is that as a professional truck driver he has a responsibility to make the road a little safer. He does this by helping stranded motorists, coming to the aid of accidents, assisting law enforcement and emergency workers.

35.     McCoy has been a volunteer firefighter for twelve years, a licensed firefighter for four years, and a licensed Emergency Medical Technician for four years through the Texas Department of State Health Services. He holds a current certificate from the International Fire Services Accreditation Congress.

36.     For his job as a truck driver, Plaintiff McCoy has passed, and is required to keep current, numerous background checks. Including, a Transportation Workers Identification Credential ("TWIC") card that authorizes him to have access to seaports, airports, military bases, and other secure facilities. The TWIC card is issued by the federal government, requires an extensive background check, disqualifies applicants with class 1 misdemeanor or felony convictions, and must be renewed every five years.

37.     The nature of McCoy's job keeps him constantly traveling between states. His delivery schedule changes from day to day, is at his employer's discretion, and is only provided to him after he finishes a delivery. He never knows when his schedule will take him to or through Minnesota. As a long-haul trucker, he does not work a typical Monday

through Friday schedule, so he does not return to his home state on the weekends. Instead, he returns to his home state only a few times a year.

38.    As a result, he lives, sleeps, and keeps his belongings in the sleeper cab of his truck.

39.    Plaintiff McCoy is acutely aware of the prevalence of violent crimes against truckers, as he has been the victim of violent crime and knows of other truckers who have also been victims. As such, he has a reasonable apprehension of fear for his safety and relies on his firearm for self-defense.

40.    As a result of Defendants active enforcement of Minn. Stat. § 624.714 Subd. 9 (prohibition of carrying firearms in vehicle without a Minnesota PTC or recognized out-of-state permit, unless secured in lockbox) and Subd. 16 (subjective recognition of out-of-state firearm permits), Plaintiff's Texas LTC permit is not recognized. Therefore, McCoy is subject to the carrying prohibition in section 624.714 Subd. 1a. Such prohibition bars Plaintiff from exercising his fundamental right to carry a firearm in public while in Minnesota for self-defense and other lawful purposes.

41.    It is too costly, time consuming, and burdensome for Plaintiff to obtain a firearm permit from all contiguous states. Plaintiff McCoy cannot afford the cost of firearm permit fees in every state.

### Plaintiff Johnson

42.    Plaintiff Johnson is a professional full-time, long-haul 18-wheel truck driver. He travels on the road delivering goods throughout the 48 contiguous states at least 300 days a year, including several trips each year to and through Minnesota.

43.    Plaintiff Johnson is a law-abiding person, a gun owner, and possesses a current and valid Florida Concealed Weapons License ("CWL") and a current and valid Georgia Weapons Carry License ("WCL"), either of which permits him to bear arms in public in Florida, Georgia, and across much of the country.

44.    Plaintiff Johnson has had his Florida CWL for about six years. He recently renewed his Florida CWL, making it current and valid until 2029. Florida CWL renewal requires completion of a safety course and demonstration of firearm competency.

45.    In 2024 Plaintiff Johnson moved to Georgia, and in October of 2024 he obtained his Georgia WCL.

46.    He has completed two National Rifle Association ("NRA") courses. Plaintiff is currently an NRA platinum member and has been an NRA member for about 20 years.

47.    Plaintiff is also currently a U.S. Concealed Carry Association ("USCCA") platinum member and has been a USCCA member for about 10 years.

48.    He regularly carries his firearm for self-defense, defense of his home, defense of others, and defense of his cargo.

49.    When Plaintiff is in his home state, he regularly practices shooting.

50.    Plaintiff is a responsible, peaceable citizen, with no history of violent behavior or other conduct that would pose any threat or danger to the public, and who is not otherwise disqualified from obtaining a Minnesota permit.

51.    Minnesota, however, does not recognize his Florida CWL or his Georgia WCL.

52.    It is his present intention and desire to lawfully carry a firearm in public, including having it readily accessible within his truck, for the purpose of self-defense while in Minnesota and would do

so if Minnesota recognized his valid, current, lawfully issued firearm permits from Florida and Georgia.

53.    But because Minnesota does not recognize either one of his out-of-state firearm permits, Plaintiff has refrained from carrying a firearm in public in Minnesota. Instead, Plaintiff securely stows his firearm in his truck, inaccessible and unusable, in accordance with Minnesota law.

54.    He travels through Minnesota several times a year.

55.    Plaintiff Johnson's personal ethos is that as a professional truck driver he has a responsibility to make the road a little safer. He does this by helping stranded motorists, coming to the aid of accidents, assisting law enforcement and emergency workers.

56.    Prior to becoming a full-time long-distance trucker Plaintiff was a firefighter, first responder, Emergency Medical Technician, was trained in handling explosives, and held a Pyrotechnic Engineer Certificate.

57.    For his job as a truck driver, Plaintiff Johnson has passed, and is required to keep current, numerous background checks. Johnson's commercial driver's license includes a special endorsement

for hazardous materials, which requires a separate background check. He also holds a Transportation Workers Identification Credential ("TWIC") card that authorizes him to have access to seaports, airports, military bases, and other secure facilities. The TWIC card is issued by the federal government, requires an extensive background check, disqualifies applications with class 1 misdemeanors or felony convictions, and must be renewed every five years.

58.    The nature of Johnson's job keeps him constantly traveling between states. His delivery schedule changes from day to day, is at his employer's discretion, and his schedule is only provided to him after he finishes a delivery. He never knows when his schedule will take him to or through Minnesota. As a long-haul trucker, he does not work a typical Monday through Friday schedule, so he does not return to his home state on the weekends. Instead, he returns to his home state only a few times a year.

59.    As a result, he lives, sleeps, and keeps his belongings in the sleeper cab of his truck.

60.    Plaintiff Johnson is acutely aware of the prevalence of violent crimes against truckers, as he knows of other truckers who have

been victims of violent crimes. As such, he has a reasonable apprehension of fear for his safety and relies on his firearm for self-defense.

61.   As a result of Defendants active enforcement of Minn. Stat. § 624.714 Subd. 9 (prohibition of carrying firearms in vehicle without a Minnesota PTC or recognized out-of-state firearm permit, unless secured in lockbox) and Subd. 16 (subjective recognition of out-of-state firearm permits), Plaintiff's Florida CWL and his Georgia WCL permit are not recognized. Therefore, Johnson is subject to the carrying prohibition in section 624.714 Subd. 1a. Such prohibition bars Plaintiff from exercising his fundamental right to carry a firearm in public while in Minnesota for self-defense and other lawful purposes.

62.   It is too costly, time consuming, and burdensome for Plaintiff to obtain a firearm permit from all contiguous states. Plaintiff Johnson cannot afford the cost of firearm permit fees in every state.

## Injury to Plaintiffs

63.   Minnesota law criminalizes the possession of a firearm without a Minnesota PTC or recognized out-of-state firearm permit.

17

64.     Plaintiffs have lawfully issued, valid, current firearm permits from three states (Texas, Florida, and Georgia), but none of them are recognized as valid firearm permits by the State of Minnesota.

65.     Plaintiffs travel to and through the State of Minnesota at least several times a year. Minnesota does not recognize their out-of-state firearm permits.  As such, Plaintiffs are forced to either forfeit their right to bear arms or violate the law to protect themselves and others. The latter of which risks criminal prosecution that would jeopardize both their professional credentials and their firearm permits.

66.     Plaintiffs travel for a living and live on the road, constantly driving through the 48 contiguous states. It is too costly, time consuming, and onerous a burden on their Second Amendment right to have to obtain a firearm permit from every state that they travel to or through.

67.     Minnesota requires a person to apply in person, pay a fee of up to $100, and then the applicant must wait up to 30 days for a decision. If the permit is issued, then the laminated permit card is mailed to the applicant. The permit expires after five years, must be

renewed in person, and it goes through the same approval process and criteria.

68.    For Plaintiffs, this means they would have to wait until they are allowed, as part of their work schedule, to return to their home state where they could gather all the necessary documentation for the Minnesota PTC application.

69.    Then they would have to either make a special trip to Minnesota just for the purpose of applying or wait until the next time their work takes them to or through Minnesota.

70.    Then, once in Minnesota, they would need to take time out of their schedule to stop at a county sheriff's office and apply in person.

71.    For that entire trip, Plaintiffs would be prohibited from carrying their firearm on their persons in public and prohibited from carrying their firearm in their trucks in a manner that would allow the firearm to be used for self-defense.

72.    After submitting their applications, Plaintiffs would have to wait up to 30 days for a decision. Once approved, the Minnesota PTC would be mailed to their home addresses. So, Plaintiffs would not be able to retrieve their permit until the next time work allowed them to

return to their home state. Then, every five years, they would have to follow that same process to renew their permit.

73.    Each of the 48 contiguous states have their own firearm permit application process, requirements, costs, wait times, and obligations.

74.    Plaintiffs cannot afford the costs of firearm permits fees in every state they travel to or through. And it is too onerous a burden on Plaintiffs Second Amendment right, and millions of other similarly situated Americans, to manage the firearm permit application process, requirements, costs, wait times, and obligations for every state that they travel to or through.

## CLAIMS

### Claim I

**Violation of Second Amendment**

75.    Plaintiffs incorporates the preceding paragraphs as if fully set forth below.

76.    The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

77.    The right to keep and bear arms, for self-defense and other lawful purposes, is a fundamental right necessary to our system of ordered liberty.

78.    The Second Amendment is incorporated as applicable to the states through the Fourteenth Amendment.

79.    To bear arms means wearing or carrying on a person, in clothing or in a pocket, for the purpose of being armed and ready for offensive or defensive action in case of conflict with another person.

80.    Plaintiffs are members of "the people" who desire to "bear" a quintessential protected "arm" (a handgun) in public.

81.    The Second Amendment's plain text presumptively protects Plaintiffs' desired conduct of carrying a handgun in public.

82.    To justify the state's restriction of the right to bear arms, Defendant cannot simply posit that the restriction promotes an important interest. Instead, Defendant must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.

83.    Thus, the burden is on Minnesota to prove, based on Founding-era historical tradition, that its refusal to recognize the carry

permits of almost two-thirds of Americans with valid firearm permits from other states comports with the original public understanding of the Second Amendment.

84.    Additionally, to pass Constitutional muster, Minnesota would have to demonstrate that conditioning an individual's exercise of their fundamental rights on them *first* forfeiting that right to enter the state and seek permission comports with the original public understanding of the Second Amendment.

85.    Minnesota cannot meet this burden. There is no well-established and representative historical tradition of prohibiting law-abiding citizens who cross state lines from bearing arms.

86.    Also, there is no historical analogue for *only* allowing state residents to carry firearms; there is no historical analogue for out-of-state residents having to *first* enter the state to seek a firearm permit from the visiting state in order to exercise the right to bear arms in public for the purpose of self-defense; and there is no historical analogue for states to not recognize the out-of-state residents' lawfully issued firearm permits.

87.    By infringing the Second Amendment right to bear arms in public in these ways, the Minnesota's laws, regulations, and actions discussed in the foregoing allegations violate the Second Amendment, which apply to Defendant by operation of the Fourteenth Amendment, both facially and as applied to Plaintiffs, and are therefore invalid.

88.    Thus, Defendant's reciprocity list and Minn. Stat. Ann. § 624.714 Subd. 16 violates the Second Amendment.

## REQUEST FOR RELIEF

Plaintiff requests the following relief:

A.    A judgment declaring that Minnesota's laws, practices, policies, and customs of refusing to recognize the lawfully issued out-of-state firearm permits violates the Second Amendment;

B.    An order declaring that Defendant must recognize and honor lawfully issued firearm permits issued from all other states, regardless of whether the permit holder is a resident of Minnesota;

C.    A permanent injunction prohibiting Defendant from enforcing all laws prohibiting the carrying of a firearm without a Minnesota PTC or recognized out-of-state firearm permit if the person accused of that crime has an otherwise-valid permit to carry issued by

any state, and is not otherwise prohibited from possessing or carrying

firearms;

     D.    An award of Plaintiffs' reasonable attorneys' fees and costs

under 42 U.S.C. § 1988; and

     E.    Any further relief this Court deems just and proper.

Respectfully submitted this 7th day of January 2025.

_____
Kelly Keegan
Minnesota Bar No. 0386803
KEEGAN LAW OFFICE
1622 West Lake Street
Minneapolis, MN 55408
(612) 584-3834
kkeegan@keeganlawoffice.com