IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| DAVID A. MCCOY II, JEFFREY M. JOHNSON SR.<br><br>　　　　　*Plaintiffs*,<br><br>vs.<br><br><br><br>BOB JACOBSON, in<br>His official capacity as the<br>Commissioner of the Department<br>Of Public Safety,<br><br>　　　　　*Defendant*. | CIVIL NO. 0:25-cv-00054<br><br><br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

Plaintiffs challenge Minnesota's permitting and reciprocity regime as unconstitutional because it requires Plaintiffs to forgo their Second Amendment right to publicly carry, despite already have obtained permits from their respective states. Further, Plaintiffs, due to the nature of their work, suffer impermissible temporal burdens to obtain a permit from Minnesota. Most importantly, none of the relevant Minnesota firearm regulations comport with a Founding-era tradition as required by *Bruen*.

Defendant's motion to dismiss fails because (1) Defendant misapplies the relevant pleading standards and (2) attempt to circumvent the purpose of *Bruen* by forcing

Plaintiffs to shoulder the burden of demonstrating that Minnesota's firearm regulations do not comport with history. Defendants have failed to show that there is no set of facts which would entitle Plaintiffs to relief. Instead, taking all of Plaintiffs allegations as true, construing them liberally, and drawing reasonable inferences therefrom, Plaintiffs have sufficiently raised a right to relief beyond a mere speculative belief.

## FACTUAL BACKGROUND

### Plaintiffs

Plaintiff McCoy is a resident of Texas. Dkt. 1, ¶ 8. Plaintiff Johnson is a resident of Georgia. Dkt. 1, ¶ 9. Plaintiff McCoy has a valid, current Texas License to Carry ("LTC"). Dkt. 1, ¶ 26. Plaintiff Johnson has a valid, current Florida Concealed Weapons License ("CWL") and a valid, current Georgia Weapons Carry License ("WCL"). Dkt. 1, ¶ 43. Both Plaintiffs are law abiding citizens, with no history of violence or other conduct that would pose any threat or danger to the public and are not otherwise disqualified from obtaining a Minnesota permit. Dkt. 1, ¶¶ 29, 50. Both Plaintiffs regularly carry their firearms for self-defense, defense of their homes, defense of others, and defense of their cargo. Dkt. 1, ¶¶ 28, 48.

Both Plaintiffs are professional full-time, long-haul 18-wheel truckers. Dkt. 1, ¶¶ 25, 42. They both travel on the delivering goods throughout the 48 contiguous states at least 300 days a year, including several trips each year to and through Minnesota. *Id.* Both Plaintiffs travel through Minnesota several times a year. Dkt. 1, ¶¶ 33, 54. Both Plaintiffs are constantly traveling between states, their delivery schedules change from day to day at their employer's discretion, and are only provided to them after they finish a delivery.

Dkt. 1, ¶¶ 37, 58. Both Plaintiffs are only able to return to their home states a few times a year. *Id.* Because of the nature of their jobs, both Plaintiffs live, sleep, and keep their belongings in the sleeper cabs of their trucks. Dkt. 1, ¶¶ 38, 59.

Both Plaintiffs are acutely aware of the prevalence of violent crimes against truckers and know of other truckers who have been victims of violent crimes. Dkt. 1, ¶¶ 39, 60. As such, both Plaintiffs have a reasonable apprehension of fear for their safety and they rely on their firearm for self-defense. *Id.*

However, both Plaintiffs are unable to unable to carry their firearm in public while in Minnesota because Minnesota does not recognize the lawfully issued firearm permits from Texas, Florida, and Georgia. Dkt. 1, ¶¶ 32, 53. Instead, in order to comply with Minnesota law, both Plaintiffs have to securely stow their firearms in their truck in a manner than leaves the firearm inaccessible and unusable for self-defense. *Id.*

## Minnesota Law

Minnesota prohibits publicly carrying a firearm for self-defense unless one has a Minnesota Permit to Carry ("PTC") under Minn. Stat. § 624.714 or a firearm permit issued by a state for which Defendant has granted recognition or reciprocity.

Under Minnesota law, "[a] person…who carries, holds, or possesses a pistol in a motor vehicle, snowmobile, boat, or on or about the person's clothes or the person, or otherwise in possession or control in a public place…without first having obtained a permit to carry the pistol is guilty of a gross misdemeanor. A person who is convicted a second or subsequent time is guilty of a felony." Minn. Stat. § 624.714 Subd. 1a.

A gross misdemeanor is punishable by up to 364 days in prison, a fine of up to $3,000, or both. Minn. Stat. § 609.03(2). A felony is punishable by up to five years in prison, a fine of up to $10,000, or both. Minn. Stat. § 609.03(1).

"Applications by Minnesota residents for permits to carry shall be made to the county sheriff where the applicant resides. Nonresidents, as defined in section 171.01, subdivision 42, may apply to any sheriff." Minn. Stat. § 624.714 Subd. 2(a).

Unless a sheriff denies a permit under one of the enumerated exceptions, a sheriff must issue a permit to an applicant if the person: (1) has the training in the safe use of a pistol; (2) is at least 21 years old[2] and a citizen or permanent resident of the United States; (3) completes an application for a permit; (4) is not otherwise prohibited by Minnesota or Federal law from possessing a firearm; and (5) is not listed in the criminal gang investigative data system. Minn. Stat. § 624.714 Subd. 2(b). All "[a]pplications must be submitted in person." Minn. Stat. § 624.714 Subd. 3(e).

Within 30 days after the receipt of the application packet the sheriff must: "(1) issue the permit to carry; (2) deny the application for a permit to carry solely on the grounds that the applicant failed to qualify under the criteria described in subdivision 2, paragraph (b); or (3) deny the application on the grounds that there exists a substantial likelihood that the applicant is a danger to self or the public if authorized to carry a pistol under a permit." Minn. Stat. § 624.714 Subd. 6(a). Failure to notify the applicant of the denial within 30 days results in automatic issuance of the permit. Minn. Stat. § 624.714 Subd. 6(b).

Upon issuance of the permit, the laminated permit card must be sent to the applicant by mail or personal delivery. Minn. Stat. § 624.714 Subd. 6(c). The permit to carry a pistol is only valid for five years and must be renewed in the same manner as the initial application. Minn. Stat. § 624.714 Subd. 7(c).

The only way to lawfully carry a handgun in a motor vehicle in Minnesota without a Minnesota PTC or recognized out-of-state permit is to have "the pistol [] unloaded, contained in a closed and fastened case, gunbox, or securely tied package." Minn. Stat. § 624.714 Subd. 9(5).

"The commissioner must annually establish and publish a list of other states that have laws governing the issuance of permits to carry weapons that are not similar to this section. The list must be available on the Internet. A person holding a carry permit from a state not on the list may use the license or permit in this state subject to the rights, privileges, and requirements of this section." Minn. Stat. § 624.714 Subd. 16(a).

"The commissioner must, when necessary, execute reciprocity agreements regarding carry permits with jurisdictions whose carry permits are recognized under paragraph (a)." Minn. Stat. § 624.714 Subd. 16(d).

As of January 2025, Minnesota only recognizes the out-of-state permits from 20 states, and 29 states are not recognized. Included in the list of states *not* recognized are Texas, Florida, and Georgia.

## LEGAL STANDARD

"To survive a motion to dismiss for failure to state a claim, a complaint must allege sufficient facts to state a facially plausible claim to relief." *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6)). "To determine whether a complaint states a facially plausible claim, we accept the factual allegations in the complaint as true and draw all reasonable inferences in the nonmovant's favor." *Id.* (citing *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010)). "The factual allegations must be sufficient to 'raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court "must construe the complaint 'liberally'." *Id.* (quoting *Luney v. SGS Auto. Servs., Inc.*, 432 F.3d 866, 867 (8th Cir. 2005)). Therefore, "a motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986) (citations omitted).

## ARGUMENT

### I. Plaintiffs Have Article III Standing

"The irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Those elements are (1) injury in fact; (2) a causal connection between the injury suffered and the opposing party's actions; and (3) redressability. The first of these elements is that the plaintiff, "must have suffered an 'injury in fact' - an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, at 560. (internal citations omitted). Plaintiffs must first fulfill the

Article III standing requirement of 'injury in fact.' An injury in fact must be "concrete," that is, "real, and not abstract." *TransUnion, LLC. v. Ramirez*, 594 U.S. 413, 424 (2021).

### a. Injury in fact

In the context of a second amendment claim, a restriction on Plaintiff's ability to exercise their second amendment right or a credible threat of prosecution under a gun control law is sufficient to meet the injury requirement. Plaintiff's injury is actual or imminent, it is not conjectural or hypothetical. Under the motion to dismiss standard, Plaintiff's allegations are taken as true, construed liberally, and all reasonable inferences therefrom. Plaintiffs travel to or through Minnesota at least several times each year and are subject to Minnesota's firearm and permitting restrictions. Dkt. 1 ¶¶ 25, 33, 42, 54. The only way to lawfully carry a handgun in a motor vehicle in Minnesota without a Minnesota PTC or recognized out-of-state permit is to have "the pistol [] unloaded, contained in a closed and fastened case, gunbox, or securely tied package." Minn. Stat. § 624.714 Subd. 9(5). It is a reasonable inference from Plaintiffs' statements that Plaintiffs' did in fact travel to Minnesota several times last year and will again travel to Minnesota several times this year. During each of the times Plaintiffs traveled to Minnesota last year they were deprived of their right to self-defense. Likewise, each time Plaintiffs travel to Minnesota this year they will again be deprived of their right to self-defense.

Plaintiffs also face a credible threat of prosecution because Defendant actively enforces Minn. Stat. § 624.714 Subd. 9 (prohibition of carrying firearms in vehicle without a Minnesota PTC or recognized out-of-state firearm permit, unless secured in lockbox) and Subd. 16 (subjective recognition of out-of-state firearm permits). Plaintiffs' Texas LTC,

Florida CWL, and Georgia WCL permits are not recognized. As such, Plaintiffs' are subject to the carrying prohibition in section 624.714 Subd. 1a. Such prohibition bars Plaintiffs from exercising their fundamental right to carry a firearm in public while in Minnesota for self-defense and other lawful purposes.

Also, when attempting to apply for a permit, Plaintiffs are still barred from carrying the firearm in their trucks in a manner which would allow for self-defense until their permit is approved. Dkt. 1, ¶ 72. The injury only grows more severe, as Plaintiffs, who rarely return home (as little as a few times a year), could only receive their permit upon returning to their home address. Dkt. 1, ¶¶ 37, 58. This would deprive Plaintiffs of potentially months where they would be unable to carry their firearms in a manner allowing for self-defense into Minnesota, as they rarely return home. Dkt. 1, ¶¶ 37, 58.

Lastly, Plaintiffs are subject to the financial costs of applying for a permit in Minnesota, despite already having firearm permits in their home states. Dkt. 1, ¶¶ 26, 43. Considering the temporal and financial hardship, in addition to inability to engage in the constitutionally protected right to bear arms in public for self-defense. *See N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 10-11 (2022). Plaintiffs more than satisfy the 'injury in fact' requirement that the injury is "concrete" and "real, and not abstract."

### b. Causation

Plaintiffs also meet the following two Article III standing requirements: traceability and redressability. *Lujan*, at 560-561. Traceability requires that there is a "causal connection between the injury and the conduct complained of." *Dep't of Educ. V. Brown*, 600 U.S. 551, 561 (2023). Here, the injuries are twofold: the inability of Plaintiffs to

exercise their constitutional right to self-defense with a firearm, and the onerous financial and temporal burden Minnesota's permitting regime places on Plaintiffs. Plaintiffs are forced to abandon their Second Amendment right to carry a firearm for self-defense in order to apply for the permit in the first place by travelling into Minnesota, must pay the requisite fees, and carve time out of their schedule to travel home, something Plaintiffs infrequently do, in order to pick up the permit. Plaintiffs must repeat this process every five years. Minn. Stat. § 609.03(1). If Minnesota's permitting regime recognized firearm permits issued by the other Plaintiffs' respective home states, Plaintiffs' injury would cease to exist. Therefore, a clear causal connection exists between Defendant's permitting regime and Plaintiffs' injury.

### c. Redressability

Finally, the Plaintiffs' injuries are redressable by a favorable judicial decision. If the court were to rule in favor of the Plaintiffs, the burdensome requirements and prohibitions imposed by Minnesota's firearm regulations would be lifted, allowing the Plaintiffs to carry their firearms for self-defense without undue hardship, as their out of state permits would be recognized.

Plaintiffs therefore satisfy all three requirements needed to satisfy Article III standing when their complaint is read in the light most favorable to them, and all facts pleaded are accepted as true.

### d. Defendant Misapplies *Lujan*

Defendant argues that Plaintiffs, "falter on this first element of standing as they have not plausibly pleaded injury." Dkt. 15, p.5. Defendant bases this argument on the

claim that Plaintiffs are attempting to justify an "extraterritorial attack on Minnesota's law, [by] manufactur[ing] a connection to Minnesota by alleging they 'travel through Minnesota several times a year.'" Dkt. 15, p.6. Because Plaintiffs have not identified an upcoming assignment, plan, or intention to return to Minnesota, Defendant claims that Plaintiffs may, "never be assigned to drive through Minnesota again, stripping them of any quarrel they might have with its laws." Dkt. 15, p.6.

First of all, these are not reasonable inferences based on a presumption that Plaintiffs factual assertions in the complaint are true. The standard for a motion to dismiss is to accept the factual allegations as true and to view the factual allegations in the complaint in a light most favorable to the Plaintiffs. Defendant's characterization (1) deems the allegations as untrue, and (2) views them in an unfavorable light.

Second, Defendant bases this argument on a misconstruing of *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). In *Lujan*, the Supreme Court concluded a lack of standing for two wildlife-enthusiast plaintiffs seeking to enjoin the Secretary of the Interior from interpreting the Endangered Species Act in a way which they believed would imperil animals abroad in countries where plaintiffs hoped to visit and view the animals. *Lujan*, at 563.

The Court rejected Plaintiffs' standing claims in *Lujan*, stating that, "the affiants' profession of an 'intent' to return to the places they had visited before -- where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species -- is simply not enough. Such 'some day' intentions -- without any description of concrete plans, or indeed even any specification of when the some day will

10

be -- do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, at 564.

Defendants then compares *Lujan* to the present case, arguing that Plaintiffs McCoy and Johnson, "offer nothing more than 'some day' intentions about returning to Minnesota – without any description of 'concrete plans,' assigned work routes that will take them through Minnesota, or 'any specification of *when* the some day' of such assignments might be." Dkt. 15, p.7.

Defendants misconstrue the *Lujan* decision in a major way. *Lujan* dealt with a motion for summary judgment. *Id*. Under the Federal Rules of Civil Procedure Rule 56(d),  "the plaintiffs, in order to survive the defendants' motion for summary judgment, needed to demonstrate, "through specific facts, not only that listed species were in fact being threatened by funded activities abroad, but also that one or more of respondents' members would thereby be 'directly' affected apart from their 'special interest' in the subject.'" *Lujan*, at 563.

Here, Defendants have brought a motion to dismiss under FRCP Rule 12(b)(6). A motion for summary judgment standard differs greatly from a motion to dismiss standard. A motion to dismiss standard requires the Court to accept as true all factual allegations and view them in the light most favorable to the Plaintiff. *Schaller Tel. Co. V. Golden Sky Sys., Inc.,* 298 F. 3d 736 (8th Cir.).

Defendant attempts to supplant the standard for Rule 12(b)(6) motions to dismiss with the Rule 56(d) standard for summary judgment by arguing that Plaintiffs lack a description of concrete plans to return to Minnesota. However, viewing facts in the light

most favorable to the plaintiff, as required by the Rule 12(b)(6), Plaintiffs have, and will continue to, travel through Minnesota and be subject to the firearm and permitting regime.

The *Lujan* court itself drew this distinction, stating that, "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, at 561 (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 882-889 (1990).

Plaintiffs allege that they both, "travel to and through the State of Minnesota at least several times a year." Dkt. 1, ¶ 65. Plaintiffs are unable to give more precise information on their travel schedule as both Plaintiffs McCoy and Johnson have their delivery schedule change from day to day at their employer's discretion. Dkt. 1 ¶¶ 37, 58. In contrast, the plaintiffs in *Lujan* had no plan whatsoever to travel to foreign countries in the future, merely a 'hope' to return, even after affidavits were submitted by the non-moving party. *Lujan*, at 564.

Therefore, Defendant's Article III standing argument is based on a simplistic conflation of what this Court must accept as true at this stage of litigation. However, because Defendant made a motion to dismiss, this Court must accept as true the factual allegations that Plaintiffs have, and will continue to, travel through Minnesota as required by their work.

## II. Minnesota's Shall-Issue Permitting Regime is Unconstitutional

Defendants have a raised an argument that is not proper to bring under a motion to dismiss. Defendants argue that Minnesota's permitting scheme is constitutional and as such Plaintiffs' claim should be dismissed. But, arguing the constitutionality of the law on motion to

### a. Plaintiffs' Challenge Passes *Bruen's* First Step Because Plaintiffs Have Successfully Alleged an Infringement of Their Second Amendment Rights

The Second Amendment states that, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. The Supreme Court in *Bruen* stated that, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 16 (2022).

In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment protects an individual's right to possess a firearm, unconnected with service in a militia, and to use that arm for traditionally lawful purposes, such as self-defense within the home *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). In *Bruen*, the Court held that New York's proper-cause requirement for obtaining a license to carry a concealed handgun in public violated the Second Amendment, as it prevented law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms in public for self-defense *N.Y. State Rifle & Pistol Ass'n,* at 71. What these cases serve to demonstrate is that "individual conduct" under the first step of the *Bruen* analysis explicitly encompasses the ability to carry a firearm in public for lawful purposes, such as self-defense.

Minnesota's permitting regime explicitly prevents Plaintiffs from lawfully carrying their firearm where they can use it for a lawful purpose, such as self-defense, by not recognizing Plaintiffs' out-of-state firearm permits.[1] Therefore, Plaintiffs' satisfy Step One of the *Bruen* analysis, which is sufficient to survive a motion to dismiss.

Defendant brings three arguments for why Plaintiffs claim fails at Step One of the *Bruen* analysis.

First, Defendant argues that Minnesota's Reciprocity Provision does not fall within the sweep of the Second Amendment, "for the simple reason that it regulates other states, not individuals." Dkt. 15, p.10. Defendant argues that because the plain text of Minnesota's Reciprocity Provision requires the Commissioner to curate a list, "of other states" with permitting regimes that track Minnesota's, the Reciprocity Provision does not regulate individual conduct. Dkt. 15, p.11.

Defendant's argument seems to rest on the notion that the mere mention of "other states" entails that the Reciprocity Provision does not apply to individuals. However, the section, read in full, states that, "The commissioner must annually establish and publish a list of other states that have laws governing the issuance of permits to carry weapons that are not similar to this section. The list must be available on the Internet. A *person* holding a carry permit from a state not on the list may use the license or permit in this state

---

[1] Minnesota Department of Public Safety, *Permit to Carry Reciprocity*, https://dps.mn.gov/divisions/bca/public-services-bca/firearms-information/permit-carry-reciprocity.

subject to the rights, privileges, and requirements of this section." Minn Stat. § 624.714 Subd. 16(a).

Read in its entirety, the statute plainly regulates individual conduct as it prevents a person holding a permit on a state not on the approved reciprocity list from engaging in the constitutionally protected activity of carrying a firearm for lawful purposes. If Defendant wishes to argue that the mere mention of "states" in a statute regulating firearms renders the statute unable to be challenged, then Defendant must concede that the mention of "people" in the statute would render the statute challengeable, resulting in a nonsensical legal ouroboros.

Defendant, using this argument, also states that, "A better challenge to the Reciprocity Provision might be one by the nonreciprocal states themselves, as the regulated entities. But states, of course, are not "part of 'the people' with a right to keep and bear arms," *Worth*, 108 F.4th at 688, so that challenge would also fail at Step One of Bruen" Dkt. 15, p.11, n.2. Under such an idea, the ability to challenge reciprocity permitting schemes would be de-facto impossible, since, according to the Defendants, neither states nor individuals would have standing.

Second, Defendant argues that Plaintiffs' arguments, "ignore important issues such as the Tenth Amendment and federalism concerns." Dkt. 15, p.10.

However, Defendants incorrectly assert that an analysis of firearm laws against a Second Amendment claim requires consideration of the State's interest. Instead, the U.S. Supreme Court has made clear that the government's interest is not a factor in considering a Second Amendment challenge. "We have rejected a framework for Second

Amendment challenges that would balance the right to bear arms against 'other important government interests.'" *SEC v. Jarkesy*, 603 U.S. 109, 158 (2024) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 634 (2008)).

Defendant argues that, "*Bruen's* test...does not impose a floor. Thus, contemporary firearm regulations comply with the Second Amendment so long as they fit under *Bruen's* ceiling, even when those regulations could be more permissive, or when they differ from the regulations of neighboring states." Dkt. 15, p.12. This misconstrues a *Bruen* analysis. The analysis is simple, if the Plaintiffs' individual conduct is covered by the plain text of the Second Amendment, such as a desire to carry a handgun for self-defense, then it is presumptively protected by the Constitution. *Bruen*, at 17, 19-20. Then, "[t]o justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, at 19. In other words, Defendant cannot merely assert that its failure to recognize out of state permits serves some government interest it must affirmatively show that historically states (1) prohibited out of state residents from carrying firearms while travelling in their state, (2) required out of state residents to seek permission from the visiting state to carry their firearms while visiting, and (3) refused to recognize the lawfully issued firearm carrying permits of out of state visitors. Defendants have not met that burden, so the court must deny the motion to dismiss.

Defendant makes a critical error here, as the claim brought by Plaintiffs is that Minnesota's reciprocity and permitting regime itself is unconstitutional under *Bruen*, and the Second Amendment rights secured to *all* individuals through the Fourteenth Amendment more broadly. *See McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010). Plaintiffs do not argue that Minnesota must match other states in its regulations, but rather that the method of firearm regulation via Minnesota's reciprocity and permitting regimes is unconstitutional itself. Minnesota need not, "align its permitting regime with those of other states," but it must still comport with the Second Amendment and its guarantee to individuals to carry a firearm in public for lawful purposes.

Third, Defendant argues that Minnesota's reciprocity provision is, "presumptively constitutional." Defendant first cites to *Bruen*, 597 U.S. at 13 n.1 to state that shall-issue permitting regimes are, "presumptively constitutional." Dkt. 15, p.14. This is again a gross mischaracterization of *Bruen*. The footnote cited by Defendant contains no such language that shall-issue permitting regimes are presumptively constitutional. *Bruen*, 597 U.S. at 13 n.1. Rather, the footnote merely canvasses the different types of permitting regimes across the states. Thus, this part of *Bruen* cannot be used to argue that shall-issue permitting regimes are presumptively constitutional. Moreover, there is no presumptive of validity or constitutionality in a *Bruen* analysis.

Defendant next cites a series of out of circuit cases to demonstrate that shall-issue permitting regimes are presumptively constitutional. Dkt. 15, p.13. However, all three decisions base their determination of presumptive constitutionality on the dicta in Justice Kavanaugh's concurrence. *Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 224-25 (4th

Cir. 2024); *Conn. Citizens Def. League, Inc. v. Thody*, No. 23-724-cv, 2024 WL 177707, at *5-6 (2d Cir. Jan. 17, 2024); *McRorey v. Garland*, 99 F.4th 831, 838-39 (5th Cir. 2024). Using dicta alone cannot suffice for a finding that shall-issue permitting regimes are somehow "presumptively constitutional."

More importantly, presumptive constitutionality of shall-issue permitting regimes conflicts with the *Bruen* analysis as a whole. After a determination that a statute plainly covers an individual's conduct within the sweep of the Second Amendment, the burden shifts to the government to demonstrate that the regulation comports with the history and tradition of regulating firearms. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 19 (2022). Thus, there is no presumptive constitutionality of shall-issue permitting regimes. Rather, it is Defendant's attempt to circumvent the purpose of *Bruen:* to require states to justify their firearm regulations.

Because Plaintiffs have plausibly pleaded that Minnesota's reciprocity and permitting regimes regulate individual conduct protected by the Second Amendment, this Court should deny Defendant's motion to dismiss.

### B. Minnesota's Permitting Regime Does Not Comport with History and Tradition

When the Second Amendment presumptively covers an individual's conduct, courts must "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding" via examination of the Founding-era "principles that underpin our regulatory tradition." *Bruen,* 597 U.S. 1 at 26. And "[o]nly" if the government "justif[ies] its regulation by demonstrating that it is consistent with the

Nation's historical tradition of firearm regulation … may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 24.

In reviewing the historical evidence, the *Bruen* Court cabined review of relevant history to a narrow time period, because "not all history is created equal," focusing on the period around the ratification of the Second Amendment, and perhaps the Fourteenth Amendment, but only to the extent that it "mere[ly] confirm[s]" a Founding-era tradition. *Bruen*, 597 U.S. at 37. Indeed, the Court noted that "post-ratification" interpretations "cannot overcome or alter that text," and "we have generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." *Id.* at 36, 37; see also *Bruen*, 597 U.S. 37-60 (discussing the lack of relevant historical prohibitions on concealed carry in public.)

First and foremost, it is not Plaintiffs' burden to prove that Defendants' permitting scheme is unconstitutional based on history. Instead, it is Defendant's burden to prove that it is constitutional. The relevant analysis is whether there is a historical analogue for (1) prohibiting law abiding citizens who cross state lines from bearing arms; (2) only allowing state residents to carry firearms; (3) for out of state residents to first enter the state to seek a firearm permit from the visiting state in order to exercise the right to bear arms in public for the purpose of self-defense; and (4) states to not recognize the out of state residents' lawfully issued firearm permit. Defendant has failed to identify any such analogs.

Defendant argues that Minnesota's reciprocity and permitting regime, "facilitate Minnesota's prerogative and obligation to ensure firearm permits are only issued to responsible, law-abiding individuals." Dkt. 15, p.15. Defendant then states that Minnesota's challenged firearm regulations are historical analogues to surety laws, which the Court described in *Rahimi* as a, "mechanism for preventing violence before it occurred." *Rahimi*, 602 U.S. at 697; Dkt. 15, p.17.

However, the Minnesota's firearm restrictions that Plaintiffs are challenging differ greatly from surety laws. The Supreme Court in *Rahimi* articulated that the purpose of surety laws was to allow the government to disarm an individual "when an individual poses a clear threat of physical violence to another." *Rahimi*, at 698. The challenged regulation in *Rahimi* was upheld because it only allowed the disarming of individuals, "only once a court has found that the defendant 'represents a credible threat to the physical safety' of another. *Id.*, at 698-699.

In contrast, Minnesota's permitting regime does not require a finding first that a person may be a credible threat, but implicitly assumes that all individuals, both Minnesota residents and those of other states, must meet a series of prerequisites to determine that they are "law-abiding individuals." Dkt. 15, p.15.

The difference between the purpose of Minnesota's regulations and the principle discerned by the Supreme Court could not be starker. The *Rahimi* court explained at length that surety laws, unlike the laws overturned in *Bruen* and *Heller* applied only to specific individuals (those found likely to commit violence in the future), rather than an entire category of citizens. *Rahimi*, at 698-700. An assertion that Minnesota's laws are

akin to surety laws because they were a, "mechanism for preventing violence before it occurred" is therefore the opposite of the principle articulated in *Rahimi*. The Minnesota restrictions impose a prerequisite on firearm ownership and transportation, whereas surety laws impose the penalty of disarmament *after* a finding that violence is likely to occur. Because Defendant cannot analogize surety laws to the current form of Minnesota's challenged regulation, Defendant fails to meet his burden that Minnesota's firearm regulations comport with history and tradition.

Therefore, this Court should reject Defendant's argument that Minnesota's firearm laws match the history and tradition of firearm regulation in this Nation.

### a. Plaintiff Can Win on Their Facial Challenge

First of all, Defendants misconstrue Plaintiffs' claim. Plaintiffs challenge is a facial challenge *and* an as applied challenge. Dkt.1, ¶ 87. Plaintiffs' complaint advances and satisfies the requirements for a facial challenge.

When a facial challenge is brought under the Second Amendment at pleading stage, the Plaintiffs must first plausibly plead that the text covers individual conduct. *United States v. Rahimi*, 602 U.S. 680, 708 (2024)( Gorsuch, J., concurring). After successfully pleading this, "the question becomes whether that law, in at least some of its applications, is consistent with historic firearm regulations." *Id*. This burden does not rest with the plaintiff, but rather with the government. *Id.* at 708-709.

In the present case, Plaintiffs are challenging the abrogation of their right to carry a firearm in the case of confrontation. Without a permit, Plaintiffs are unable to carry

their firearm in a manner which would be useful in a confrontation. Minn. Stat. § 624.714 Subd. 9(5). In order to obtain a permit, Plaintiffs must temporarily relinquish their Second Amendment right, despite already being licensed to carry in other states. Minn. Stat. § 624.714 Subd. 3(e). Therefore, Minnesota's firearm permitting regime explicitly regulates individual conduct covered by the text of the Second Amendment.

Defendant relies on Justice Gorsuch's concurring opinion in *Rahimi* to argue that Plaintiffs must show "no set of circumstances" exist in which Minnesota's law can be applied without violating the Second Amendment. Dkt. 15, p.8. The defendant in that case challenged a law which prevented him from possessing a firearm in the case of confrontation, to which Justice Gorsuch explained "no one questions that the law [defendant] challenges addresses individual conduct covered by the text of the Second Amendment. So, in this facial challenge, the question becomes whether that law, in at least some of its applications, is consistent with historic firearm regulations." *United States v. Rahimi*, 602 U.S. 680, 708 (2024)( Gorsuch, J., concurring).

As discussed previously, Plaintiffs have sufficiently demonstrated that the conduct at issue falls within the plain text of the Second Amendment, but the Defendants have not provided any historical analogue to justify its restrictions on non-residents. Defendant has failed to demonstrate that its reciprocity law, "in at least some of its applications, is consistent with the historic firearm regulations." *Id.*

## CONCLUSION

Based on the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's motion to dismiss in its entirety.

Kelly Keegan
Minnesota Bar No. 0386803
KEEGAN LAW OFFICE
1622 West Lake Street
Minneapolis, MN 55408
(612) 584-3834
kkeegan@keeganlawoffice.com

*/s/ Loren A. Seehase*
Loren A. Seehase*
Hawaii Bar No. 10414
LIBERTY JUSTICE CENTER
7500 Rialto Blvd., Suite 1-250
Austin, TX 78735
(512) 481-4400
lseehase@libertyjusticecenter.org

*Counsel for Plaintiffs*
*\* Admitted Pro Hac Vice*