**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

JEFFREY M. JOHNSON, SR.,

                                                    Civil No. 25-54 (JRT/DTS)

                        Plaintiff,

v.

                                        **MEMORANDUM OPINION AND ORDER**
BOB JACOBSON,                           **GRANTING DEFENDANT'S MOTION TO**
                                        **DISMISS**

                        Defendant.

---

Duncan James Crim, **LIBERTY JUSTICE CENTER**, 970 Pine Road, Carlisle, PA 17015; Kelly J. Keegan, **KEEGAN LAW OFFICE**, 1622 West Lake Street, Minneapolis, MN 55408; and Ryan Morrison, **LIBERTY JUSTICE CENTER**, 7500 Rialto Boulevard, Suite 1-250, Austin, TX 78725, for Plaintiff.

Amanda E. Prutzman, Elizabeth C. Kramer, and Madeleine DeMeules, **OFFICE OF THE MINNESOTA ATTORNEY GENERAL**, 445 Minnesota Street, Suite 600, Saint Paul, MN 55101, for Defendant.

Plaintiff Jeffrey M. Johnson, Sr., a professional truck driver from Georgia, challenges Minnesota's refusal to recognize firearm permits lawfully issued by all other states, which he alleges violates the Second Amendment right to bear arms.  Under Minnesota law, people in Minnesota cannot lawfully carry a firearm without a Minnesota permit or a permit from one of the 33 states to which Minnesota currently grants reciprocity.  Johnson has permits from states that are not granted reciprocity in Minnesota.  Defendant Bob Jacobson, Commissioner of the Minnesota Department of Public Safety ("the Commissioner"), moves to dismiss, arguing that Johnson lacks standing

and that Minnesota's permitting regime and reciprocity provision are in any event constitutional. The Court concludes that Johnson has Article III standing. But pursuant to *Bruen*'s two-step test, the Court finds that Minnesota's permitting regime and reciprocity provision are constitutional. Accordingly, the Court will grant the Commissioner's motion to dismiss and dismiss this action with prejudice.

## BACKGROUND

### I.    FACTS

#### A.    Minnesota's Firearm Permitting Regime

Under Minnesota Law, a person who "carries, holds, or possesses a pistol in a motor vehicle, snowmobile, or boat, or on or about the person's clothes or the person, or otherwise in possession or control in a public place" must have a Minnesota permit to carry or a permit issued by a state for which Minnesota has granted reciprocity. Minn. Stat. § 624.714, subds. 1a, 16. Failure to abide by this law may result in a gross misdemeanor or a felony. *Id*. § 624.714, subd. 1a.

Minnesota residents and non-residents may apply for a Minnesota permit to carry. *Id.* § 624.714, subd. 2(a). Applications cost up to $100 and must be submitted in person. *Id.* § 624.714, subd. 3(e)–(f). Minnesota's permitting regime dictates that Minnesota "shall issue" a permit if the applicant: (1) has pistol safety training; (2) is at least 21 years old and a U.S. citizen or permanent resident; (3) completes the application; (4) is not prohibited from possessing a firearm under state or federal law; and (5) is not listed in the criminal gang database. *Id*. § 624.714 subd. 2(b). A permit may also be denied if there

-2-

is a substantial likelihood that the applicant poses a danger to themselves or others. *Id*. § 624.714 subds. 2(b), 6(a). Applications for permits to carry must be granted or denied within 30 days, or else they will automatically be issued. *Id*. § 624.714 subd. 6(a)–(b). Approved applicants receive a laminated permit by mail or personal delivery. *Id*. § 624.714 subd. 6(c). Permits are valid for five years and may be renewed through the same process. *Id*. § 624.714, subd. 7(c).

Minnesota recognizes firearm permits from states that have similar licensing standards. Minn. Stat. § 624.714, subd. 16(a). States that the Commissioner determines do not have similar licensing standards similar to Minnesota's—and therefore do not have reciprocity—are annually published in a list, which can be found on the Minnesota Department of Public Safety's website. A person with a lawfully issued permit from any state that is granted reciprocity by the Commissioner may lawfully use their permit in Minnesota. *Id.*

As of August 2025, Minnesota grants reciprocity to 33 states.[1] Fifteen states are not currently granted reciprocity because their permitting regimes are dissimilar from Minnesota's; Florida and Georgia are among them.[2]

---

[1] *See Permit to Carry Reciprocity*, Minnesota Dep't of Pub. Safety, https://dps.mn.gov/divisions/bca/public-services/firearms-information/permit-carry-reciprocity (last visited Aug. 12, 2025) [https://perma.cc/6SJZ-XCFU].

[2] Unlike the other 49 states, Vermont does not require a permit to carry.

A person without a Minnesota permit to carry or a permit from a state granted reciprocity can still lawfully "transport a pistol in a motor vehicle . . . if the pistol is unloaded, contained in a closed and fastened case, gunbox, or securely tied package." Minn. Stat. § 624.714, subd. 9(5).

### B.    Johnson's Alleged Injury

Johnson, a resident of Georgia, is a professional truck driver who delivers goods throughout the 48 contiguous states.  (Compl. ¶¶ 9, 42, Jan. 7, 2025, Docket No. 1.)  He is also a gun owner and possesses current, valid licenses to carry from Florida and Georgia. (*Id.* ¶ 43.)  Given the prevalence of violent crimes against truckers, Johnson fears for his safety on the job.  (*Id.* ¶ 60.)  As a result, he "regularly carries his firearm for self-defense, defense of his home, defense of others, and defense of his cargo."  (*Id.* ¶ 48.)

Johnson is a law-abiding citizen with no history of violent behavior and is not otherwise disqualified from obtaining a Minnesota permit to carry.  (*Id.* ¶ 50.) Nonetheless, Minnesota does not recognize Johnson's permits to carry from Florida or Georgia.  (*Id.* ¶¶ 51, 61.)  When traveling through Minnesota, he securely stores his firearm in his truck in accordance with Minnesota law.  (*Id.* ¶ 53.)

Johnson's profession requires constant travel between states, such that he only returns to his home state "a few times a year."  (*Id.* ¶ 58.)  Because his delivery schedule changes every day at his employer's discretion and is only provided to him after he finishes a delivery, Johnson does not know when his work schedule will take him to or

through Minnesota. (*Id.*) However, Johnson alleges that his work includes "several trips to and through Minnesota" each year. (*Id.* ¶ 42, 54.)

Because of Minnesota's firearm permitting regime, Johnson alleges he is forced to either forfeit his right to bear arms or violate Minnesota Law to protect himself or others when traveling to or through Minnesota. (*Id.* ¶ 65.) He further claims that if he is forced to violate Minnesota law, he faces a threat of credible prosecution, jeopardizing his Transportation Workers Identification Credential upon a misdemeanor or felony conviction. (*Id.* ¶ 57.) Johnson alleges it is "too costly, time consuming, and burdensome . . . to obtain a firearm permit from all contiguous states," let alone "afford the cost of firearm permit fees in every state." (*Id.* ¶ 62.)

## II.    PROCEDURAL HISTORY

Johnson and another plaintiff, David A. McCoy II, initiated this action against the Commissioner on January 7, 2025, alleging that Minnesota's refusal to recognize firearm permits from all other states violates the Second Amendment. (Compl. ¶¶ 76–88.) The Commissioner moved to dismiss. (Mot. Dismiss, Feb. 18, 2025, Docket No. 12.) McCoy later filed a notice of voluntary dismissal of his claim.[3] (Notice of Voluntary Dismissal, July 3, 2025, Docket No. 31.)

---

[3] McCoy's Texas permit is now granted reciprocity in Minnesota.

**DISCUSSION**

I.    **STANDARD OF REVIEW**

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint "does not need detailed factual allegations" but must include "more than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

At the motion to dismiss stage, the Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). The Court may also consider matters of public record and exhibits attached to the pleadings, as long as those

-6-

documents do not conflict with the complaint.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

## II.     ANALYSIS

The parties dispute three issues: (1) whether Johnson is bringing a facial and/or as-applied challenge, (2) whether Johnson has Article III standing, and (3) whether Minnesota's firearm permitting regime and reciprocity provision are constitutional.  The Court will take each in turn.

### A.     Facial vs. As-Applied Challenge

In determining whether a challenge is facial or as-applied, "[t]he label is not what matters."  *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010).  Instead, what matters is whether the "claim and the relief that would follow . . . reach beyond the particular circumstances of [the] plaintiffs."  *Id.*  If the claim and relief reach beyond the plaintiff, then the challenge is facial.  *Id.*  Conversely, an as-applied challenge "consists of a challenge to the statute's application only as-applied to the party before the court."  *Republican Party of Minn. v. Klobuchar,* 381 F.3d 785, 790 (8th Cir. 2004).

Johnson requests various forms of relief, including: (1) a "judgment declaring that Minnesota's laws, practices, policies, and customs of refusing to recognize the lawfully issued out-of-state firearm permits violates the Second Amendment[,]" (2) an "order declaring that Defendant must recognize and honor lawfully issued firearm permits issued from all other states, regardless of whether the permit holder is a resident of Minnesota[,]" and (3) a "permanent injunction prohibiting Defendant from enforcing all

laws prohibiting the carrying of a firearm without a Minnesota [permit to carry] or recognized out-of-state firearm permit if the person accused of that crime has an otherwise-valid permit to carry issued by any state, and is not otherwise prohibited from possessing or carrying firearms[.]"  (Compl. at 23–24.)

The scope of the requested relief is broad.  Johnson clearly seeks relief that reaches beyond the particular circumstances of himself, as it applies to all individuals with out-of-state permits that are not granted reciprocity in Minnesota.  *Reed*, 561 U.S. at 194. Accordingly, the Court deems Johnson's challenge to be facial.

As a result, Johnson must demonstrate that Minnesota's permitting regime is unconstitutional in all its applications, not solely as-applied to him.  *See United States v. Rahimi*, 602 U.S. 680, 693 (2024).

### B.    Standing

The Commissioner argues that Johnson lacks Article III standing because he has not alleged a non-hypothetical injury. To satisfy Article III standing requirements, Johnson must demonstrate that (1) he suffered an injury in fact that is concrete, particularized and actual or imminent, (2) the injury was likely caused by the Commissioner, and (3) the injury would likely be redressed by judicial relief.  *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560–61 (1992); *see also L.H. v. Indep. Sch. Dist.*, 111 F.4th 886, 892 (8th Cir. 2024). Johnson, as the party invoking federal jurisdiction, bears the burden of demonstrating that he has Article III standing.  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).  At

the pleading stage, Johnson "must clearly allege facts demonstrating each element."

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation modified).

Only the first element—injury in fact—is disputed.  To satisfy the injury-in-fact requirement, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).

Johnson's injury is concrete and particularized, as the reciprocity provision prohibits him from carrying a firearm in Minnesota for lawful purposes, including self-defense, despite his Florida and Georgia permits.  The issue, however, is whether Johnson's injury is "imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (citation modified).  The Commissioner argues that Johnson's alleged injury is not imminent because he only alleges injury when he travels to or through Minnesota, yet his allegations lack meaningful details regarding any plans, intentions, or assignments supporting a future return to Minnesota.

The Court finds that Johnson's injury is imminent.  Johnson alleges that he travels through or to Minnesota several times a year as a professional long-haul truck driver.  It is true that "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that [Supreme Court] cases require."  *Id.* at 564.  But at the pleading stage, "general factual allegations of injury resulting from the defendant's

conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'"  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Accordingly, the Court finds that Johnson's injury in fact is sufficiently imminent for standing purposes.

In conclusion, Johnson has plausibly alleged Article III standing.

### C.    Constitutionality

Finally, the parties dispute the constitutionality of Minnesota's permitting regime and reciprocity provision.

Under the Second Amendment, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  The Supreme Court has interpreted this language to mean that the Second Amendment protects an individual right to bear arms, *District of Columbia v. Heller*, 554 U.S. 570, 593 (2008), and applies to the states, *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010).   However, the rights bound up in the Second Amendment are not without limit.  *See N.Y. State Rifle & Pistol Ass'n Inc. v. Bruen*, 597 U.S. 1, 70 (2022); *Heller*, 554 U.S. at 595, 626–27.

In *Bruen*, the Supreme Court laid out the two-part framework for analyzing Second Amendment challenges, which considers "text, then history."  *Worth v. Jacobson*, 108 F.4th 677, 687 (8th Cir. 2024).  First, courts consider whether "the Second Amendment's plain text covers an individual's conduct."  *Bruen*, 597 U.S. at 17.  If so, then the conduct

is presumptively protected. *Id.* Second, the government must "justify its regulation" by "demonstrat[ing] that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* If the government justifies its regulation, then "a court [may] conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961)).

### 1.    Text

At Step One of *Bruen's* test, the Court asks three questions to resolve whether the plain text of the Second Amendment "covers an individual's conduct." *Bruen*, 597 U.S. at 32. Such inquiries are: (1) whether Johnson is "part of 'the people' whom the Second Amendment protects," (2) whether the firearms at issue are "weapons 'in common use' today for self-defense," and (3) whether "the plain text of the Second Amendment protects [Johnson's] proposed course of conduct." *Id.* (quoting *Heller*, 554 U.S. at 580, 627).

The parties dispute whether Johnson is "part of the people" and whether the plain text of the Second Amendment covers his proposed course of conduct.[4]

First, the Commissioner contends that Johnson is not "part of the people" the Second Amendment aims to protect because Minnesota's reciprocity provision regulates states, not individuals. In particular, he argues that Minnesota's permitting scheme imposes obligations on the State to recognize certain out-of-state permits but does not

---

[4] It is undisputed that Johnson's firearms are "Arms" covered by the Second Amendment.

regulate individual conduct directly.  *Cf. Bruen*, 597 U.S. at 17 (requiring that "the Second Amendment's plain text cover[] an individual's conduct" (emphasis added)).  However, the Court finds this argument to be unpersuasive.  Minnesota's reciprocity provision expressly conditions the right of individuals to carry firearms in Minnesota on whether their out-of-state permit is granted reciprocity.  *See* Minn. Stat. § 624.714, subd. 16(a).  The provision thus regulates the ability of an "ordinary, law-abiding, adult citizen[]," such as Johnson, to bear arms in Minnesota.  As such, the Court deems Johnson to be "part of the people" whom the Second Amendment presumptively protects.  *Bruen*, 597 U.S. at 31; *Heller*, 554 U.S. at 580.

Second, the Commissioner argues that the plain text of the Second Amendment does not cover Johnson's proposed course of conduct—i.e., publicly carrying a firearm in Minnesota for self-defense purposes without a Minnesota permit or a recognized out-of-state permit.  The Commissioner urges the Court to assess whether Minnesota's permitting regime and reciprocity provision infringe upon the individual right to keep and bear arms, as other circuits have done.  *Md. Shall Issue, Inc. v. Moore*, 116 F.4th 211, 220 (4th Cir. 2024); *United States v. Scheidt*, 103 F.4th 1281, 1284 (7th Cir. 2024).  To support this argument, the Commissioner highlights that Minnesota operates a shall-issue permitting regime, meaning that the State must issue a permit to any applicant that meets the statutory criteria.  Minn. Stat. § 624.714, subd. 2(b) (listing requirements).  In other words, Minnesota retains no discretion in deciding whether to issue a firearm permit to

an individual so long as the applicant satisfies the statutory requirements. *See Bruen*, 597 U.S. at 13 (explaining the distinction between shall-issue and may-issue permitting regimes). In contrast, may-issue regimes grant officials discretion to deny permits even when an applicant satisfies threshold requirements. In *Bruen*, the Supreme Court struck down New York's may-issue licensing scheme as unconstitutional. *Id.* at 70.

The Commissioner argues that courts have found shall-issue permitting regimes presumptively constitutional under *Bruen* such that they do not infringe on the right to keep and bear arms at Step One of *Bruen*'s test.[5] In support, the Commissioner points to dicta in *Bruen* where the Supreme Court distinguished between shall-issue jurisdictions and may-issue jurisdictions and hinted that shall-issue permitting regimes are presumptively constitutional. *Bruen*, 597 U.S. at 38 n.9 ("'[S]hall-issue' licensing regimes . . . do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry.") (quoting *Heller*, 554 U.S. at 635); *see also id.* at 80 (Kavanaugh, J., concurring) ("Going forward, therefore, the 43 States that employ

---

[5] *See Moore*, 116 F.4th at 222 ("[W]e hold that non-discretionary 'shall-issue' licensing laws are presumptively constitutional and generally do not 'infringe' the Second Amendment right to keep and bear arms under step one of the *Bruen* framework."); *McRorey v. Garland*, 99 F.4th 831, 837–38 (5th Cir. 2024) (analyzing *Bruen*'s dicta and holding that background checks before firearm sales are presumptively constitutional); *cf. Conn. Citizens Def. League, Inc. v. Thody*, No. 23-724, 2024 WL 177707, at *5 (2d Cir. 2024) ("[T]he purpose of the footnote was to clarify that 'nothing in *Bruen*'s analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes.").

objective shall-issue licensing regimes for carrying handguns for self-defense may continue to do so.").

While the Court finds that *Bruen* does acknowledge the presumptive constitutionality of shall-issue permitting regimes, the Court declines to insert the presumptive-constitutionality-infringement inquiry into Step One of the *Bruen* analysis absent clearer direction from the Eighth Circuit. *Bruen* instructs courts to ask whether the plain text covers an individual's conduct, not whether the law constitutes an infringement. And the Eighth Circuit has yet to adopt other circuits' interpretation otherwise. *See Moore*, 116 F.4th at 220; *Scheidt*, 103 F.4th at 1284. Whether shall-issue regimes are presumptively constitutional is more suitable at Step Two of the *Bruen* analysis because the inquiry does not alter the textual scope of the right to keep and bear arms. But Johnson's proposed conduct—i.e., publicly carrying a firearm in Minnesota for self-defense—falls squarely within the scope of activity that the Second Amendment protects at Step One. *See Bruen*, 597 U.S. at 31–32.

Under the existing *Bruen* framework, the Court finds that Johnson has plausibly alleged that the plain text of the Second Amendment covers his individual conduct.

### 2.    History

Under Step Two of *Bruen*, the Supreme Court directs courts to assess "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 597 U.S. 1, 29. This requires examining whether "modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden

is comparably justified." *Id.* The Court finds that Minnesota's firearm permitting regime and reciprocity provision satisfy both the "how" and "why" prongs of historical inquiry.

First, the permitting regime and reciprocity provision satisfy the "how" part of *Bruen's* historical analysis. The requirement that individuals obtain a permit before carrying firearms in the state of Minnesota is consistent with a longstanding tradition of government regulation to ensure that only law-abiding, responsible individuals bear arms. In *Rahimi*, the Supreme Court elaborated on the history of firearm regulation, which allowed the government to proactively provide firearm security measures. *See Rahimi*, 602 U.S. at 693–98 (analyzing the history of American gun laws dating back to the common law). Here, Minnesota's permitting regime is designed to prevent violence before it occurs by screening individuals for responsibility and lawfulness, much like surety laws which "provided a mechanism for preventing violence before it occurred." *Id.* at 697. And Minnesota's reciprocity provision is an extension of these preventative measures. By conditioning out-of-state permits on whether permitting standards are substantially similar to Minnesota's, Minnesota ensures that its public safety standards are not circumvented.

Second, the permitting regime and reciprocity provision also satisfy the "why" part of *Bruen's* historical analysis. The licensing process, which includes an in-person application, background check, and processing time, serves the legitimate governmental interest of ensuring public safety. Indeed, the Court is persuaded by the *Bruen* court's

-15-

explicit acknowledgement that "shall-issue" regimes designed to ensure that "those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens'" are presumptively constitutional.  *Bruen*, 597 U.S. at 38 n.9.

Johnson argues that Minnesota's permitting regime is distinct from the surety laws used by the Commissioner to justify the permitting scheme under *Bruen's* historical analysis.  According to Johnson, surety laws targeted specific individuals who were affirmatively deemed dangerous based on individualized assessments or credible threats, and only then imposed restrictions on their ability to bear arms.  In contrast, Minnesota's permitting regime applies broadly and thus lacks the individualized suspicion or tailored application. Instead, Johnson argues, Minnesota's permitting scheme functions as a regulatory barrier to exercise a Second Amendment right.

However, the Court finds this distinction unavailing.  The question is whether the burden imposed by precondition to carry in public is consistent with historical regulations.  Minnesota's permitting regime, much like the surety laws, is preventative and targets public safety; it also applies objective standards rather than arbitrary discretion.  Thus, surety laws provide historical support for Minnesota's permitting regime.

Johnson also argues that Minnesota's reciprocity provision specifically is not historically supported.  But this provision does not independently burden Second Amendment rights.  Instead, it merely establishes the scope of recognition of out-of-state permits.  If anything, Minnesota's reciprocity provision makes it easier for individuals like

Johnson to carry firearms in Minnesota; it does not add additional restrictions regarding who can or cannot carry firearms in Minnesota.  Further, the provision does not prohibit out-of-state residents from carrying firearms in Minnesota but rather requires that their out-of-state permits have similar licensing standards to those endorsed by Minnesota's legislature.  Nothing in *Bruen* or the Constitution requires states to adopt or defer to the licensing standards of other states.  Indeed, states retain authority under their police powers to regulate who may carry firearms within their borders.  *See Heller*, 554 U.S. at 620.

In sum, the Court finds that Minnesota's permitting regime and reciprocity provision do not violate the Second Amendment under *Bruen*.  Even though Johnson's conduct falls within the plain text of the Second Amendment, the Court concludes that the permitting regime and reciprocity provision are "consistent with this Nation's historical tradition of firearm regulation."  *Bruen*, 597 U.S. at 17.  Because Johnson has not established that Minnesota's regime is unconstitutional in all of its applications, his facial challenge fails.

**CONCLUSION**

Johnson facially challenges the constitutionality of Minnesota's firearm permitting regime, particularly its refusal to recognize firearm permits lawfully issued by all other states.  Though the Court finds that Johnson has plausibly alleged Article III standing, the Court also concludes that Minnesota's permitting regime and reciprocity provision are

-17-

constitutional under *Bruen*.  Accordingly, the Court will grant the Commissioner's motion to dismiss and dismiss this action with prejudice.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss [Docket No. 12] is **GRANTED**; and

2. The Complaint [Docket No. 1] is **DISMISSED with prejudice**.

   **LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  September 11, 2025                       _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                  United States District Judge